# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3443

_____

Clinton Morse Watson,                    *
                                         *
          Appellant,                     *
                                         *
     v.                                  *     Appeal from the United States
                                         *     District Court for the Southern
Robert Ray et al.,                       *     District of Iowa
                                         *
          Appellees.                     *

_____

Submitted: March 10, 1999
    Filed: September 29, 1999

_____

Before McMILLIAN, MORRIS SHEPPARD ARNOLD, Circuit Judges, and
NANGLE,[1] Senior District Judge.

_____

NANGLE, Senior District Judge.

     Clinton Morse Watson appeals the district court's[2] termination of a consent
decree issued in 1981 which addressed prison conditions at Iowa State Penitentiary
(ISP) in Fort Madison, Iowa. We affirm.

---

[1]The HONORABLE JOHN F. NANGLE, Senior United States District Judge for the Eastern
District of Missouri, sitting by designation.

[2]The HONORABLE CHARLES R. WOLLE, United States District Judge for the Southern
District of Iowa.

# I. BACKGROUND

This case began as a class action filed in 1978 by inmates at ISP. The action was brought on behalf of all present and future general population inmates at ISP challenging the conditions of confinement at the institution as violative of the Eighth and Fourteenth Amendments. After two years of discovery, a three-week trial was held in 1980. Watson v. Ray, 90 F.R.D. 143, 145 (S.D. Iowa 1981); Appellant's Br. at 2. The court appointed experts on its own motion to examine the conditions of confinement. Watson, 90 F.R.D. at 145. After the experts filed their reports, the parties entered into extensive settlement negotiations and tentatively agreed upon a proposed consent order. Id. As a result of objections raised by the named plaintiffs and members of the plaintiff inmate class, the court held a final settlement conference at the penitentiary wherein it informally gave its view of the issues it would be called upon to decide if settlement were not consummated. Id. Nevertheless, the named plaintiffs and a majority of the known class members ultimately rejected the settlement offer. Id.

In considering the merits of the action, the district court first addressed the totality of the conditions of confinement and found that the conditions violated the inmates' Eighth and Fourteenth Amendment rights. Id. In order to craft an appropriate remedy, the court reviewed the proposed settlement documents, the experts' reports, the evidentiary record, and the parties' comments. Ultimately, the court found that implementation of the proposed consent order would rectify the unconstitutional conditions of confinement and would be in the best interests of the plaintiff class. Id. Because the consent decree would "offer benefits to the inmates that could not be constitutionally imposed" and would "at the same time [adequately remedy] all serious constitutional issues" in the case, the court found that all parties would benefit from the adoption and approval of the settlement over the objections of the named plaintiffs. Id. at 147-48. Accordingly, the court accepted the proposed consent order in 1981. Id. at 151. The decree required, *inter alia*, annual monitoring of the ISP, and included a statement that the relief embodied therein might in some instances be more than what the Constitution requires. Id. at 155-56.

On May 10, 1996, the defendant prison officials moved for termination of the decree pursuant to the Prison Litigation Reform Act (PLRA), 18 U.S.C. § 3626(b)(2). Order Terminating Decree and Dismissing Pending Proceedings, J.A. at 11a. This portion of the PLRA provides for immediate termination of prospective relief regarding

prison conditions unless the court has made specific findings set forth in the statute. 18 U.S.C. § 3626(b)(2). If the court finds a current and ongoing violation of a federal right and the prospective relief is necessary and narrowly drawn, then the prospective relief will not be terminated. Id. § 3626(b)(3). The inmates asserted that the immediate termination provision of the PLRA was unconstitutional, and the United States intervened to defend the statute. Intervener-Appellee's Br. at 3.

On February 10, 1997, Judge Wolle held that the PLRA violated the inmates' constitutional rights, following a similar order entered by District Judge Harold D. Vietor. See Gavin v. Ray, No. 4-78-CV70062, 1996 WL 622556, at *4 (S.D. Iowa Sept. 18, 1996) (holding that the immediate termination provision of the PLRA violates the principle of separation of powers by requiring federal courts to reopen final judgments). The parties appealed, but this Court reversed Judge Vietor's opinion in Gavin v. Branstad, 122 F.3d 1081 (8th Cir. 1997), and remanded this case for reconsideration in light of that decision.

On remand, the inmates argued that the decree should not be terminated, that the PLRA's immediate termination provision is unconstitutional, and alternatively that they should receive an opportunity to investigate and allege current and ongoing federal violations in order to satisfy the statute. J.A. at 12a; Appellant's Br. at 4. On August 10, 1998, the district court granted the motion to terminate the decree, refused to allow any discovery, and concluded that the PLRA was not unconstitutional. J.A. at 12a-15a. The United States did not participate in the proceedings on remand. Intervener-Appellee's Br. at 4.

The plaintiff inmates appeal the termination of the consent decree claiming that the district court erred in holding that the decree did not contain the findings required under 18 U.S.C. § 3626 and that the district court erred in concluding that the immediate termination provision of the PLRA is constitutional. Alternatively, the inmates assert that the district court erred in terminating the decree without allowing the inmates an opportunity to conduct discovery concerning the existence of current and ongoing violations of federal rights.

## II. DISCUSSION

The Court reviews *de novo* the district court's interpretation of a statute. United States v. Vig, 167 F.3d 443, 447 (8th Cir. 1999); Department of Social Servs. v.

Bowen, 804 F.2d 1035, 1037 (8th Cir. 1986). When determining the meaning of a statute, our starting point must be the plain language of the statute. Vig, 167 F.3d at 447; United States v. Talley, 16 F.3d 972, 975 (8th Cir. 1994). "Our objective in interpreting a federal statute is to give effect to the intent of Congress." Vig, 167 F.3d at 447; Linquist v. Bowen, 813 F.2d 884, 888 (8th Cir. 1987). When no specific definition for a term is given in the statute itself, we look to the ordinary common sense meaning of the words. Vig, 167 F.3d at 447; United States v. Johnson, 56 F.3d 947, 956 (8th Cir. 1995). "Absent clearly expressed legislative intent to the contrary, the language is regarded as conclusive." Vig, 167 F.3d at 447; Minnesota v. Heckler, 718 F.2d 852, 860 (8th Cir. 1983).

The Prison Litigation Reform Act (PLRA) provides limitations on prospective relief in prison condition litigation. The immediate termination provision, 18 U.S.C. § 3626(b)(2), provides as follows:

> (2)     Immediate termination of prospective relief.—In any civil action with respect to prison conditions, a defendant or intervener shall be entitled to the immediate termination of any prospective relief if the relief was approved or granted in the absence of a finding by the court that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

This provision is limited by § 3626(b)(3) which states that the prospective relief will not be terminated if the court finds that it remains necessary to correct a current or ongoing violation of the federal right, extends no further than necessary to correct the violation, is narrowly drawn, and is the least intrusive means to correct the violation. "Prospective relief" is defined to include all relief other than compensatory damages, and it expressly includes consent decrees. 18 U.S.C. § 3626(g)(7), (9). "Consent decree" is defined to include any relief entered by the court based in whole or in part upon the consent or acquiescence of the parties but does not include private settlements. Id. § 3626(g)(1). The statute expressly applies to prospective relief granted before the enactment of the PLRA. Id. § 3626 note.

4

## A. Statutory Interpretation

The inmates claim that the district court erred in finding that the 1981 decree did not conform to the requirements of the PLRA. Specifically, they claim that the decree should be deemed to comply with the PLRA because it was a "litigated judgment" premised on a finding of unconstitutional conditions to which the prison officials failed to object on appeal. Appellant's Br. at 7-10. That is, because the decree was a judgment in which the finding of unconstitutional conditions was made by the district court and not by the consent of the parties, it automatically complies with the PLRA. This automatic compliance is a result of the fact that the then-existing requirements for a district court to grant injunctive relief over the objection of the party enjoined are identical to those required by the PLRA itself. See Smith v. Arkansas Dep't of Corrections, 103 F.3d 637, 647 (8th Cir. 1996) (stating in dicta that the PLRA did not change the standards for determining whether to grant an injunction). Accordingly, because the prison officials did not object when the decree was adopted that it was not narrowly tailored, they waived the right to assert that argument upon their motion for termination of the decree. Appellant's Br. at 7-15.

The inmates' argument, however, fails to recognize the unique manner in which the decree was adopted by the district court. A finding of constitutional violations was made by the court in an effort to spur ongoing settlement negotiations. Watson, 90 F.R.D. at 145. When the proposed consent decree was rejected by the named plaintiffs and other members of the inmate class, the court, acting pursuant to its powers under Federal Rule of Civil Procedure 23(e), reviewed the proposal and obtained input from the plaintiff class for the purpose of determining whether the decree was in the best interests of the class. Id. at 146. After an exhaustive and thorough review, the district court determined that the named class representatives were not acting in the best interests of the class when they rejected the settlement. Id. at 146-48. Consequently, the court accepted the proposed settlement *on behalf of the plaintiff class* and approved the consent order pursuant to its obligations under Federal Rule of Civil Procedure 23(e). Id. at 151.

Because the decree was based in part on the acquiescence of the parties (the prison officials and the court on behalf of the plaintiff class), the decree is not a "litigated judgment" in the manner in which appellant uses that term. Rather, it is a consent decree as that term is defined in the PLRA, 18 U.S.C. § 3626(g)(1). Accordingly, even if appellant's novel argument is valid for decrees that truly were not

consent decrees,[3] it would not aid the inmates in this case. This decree did not contain the findings required by the PLRA,[4] and, because it was a consent decree that admittedly provided more relief than the Constitution required,[5] it should not be deemed to comply with the PLRA. Therefore, it is subject to the immediate termination provision of § 3626(b)(2). Gavin v. Branstad, 122 F.3d at 1084.[6]

The district court found and the inmates admit that the decree was entered in 1981 without the findings required by the PLRA. J.A. at 13a ("The relief Judge Stuart awarded was not narrowly drawn but quite general."); Appellant's Reply Br. at 5 ("The relief ordered by Judge Stuart is clearly a combination of measures that cleave to the constitutional floor and those that exceed it."); Appellant's Reply Br. at 6 ("[The court and the parties] put together the remedies that seemed to best resolve the violations, but without any magic words not then required by law or even recommended by prudence."). Accordingly, the decree is subject to immediate termination pursuant to 18 U.S.C. § 3626(b)(2) unless the district court finds current and ongoing violations pursuant to § 3626(b)(3). The district court found that the inmates had failed to prove the existence of such current and ongoing violations. J.A. at 13a-14a. Consequently, the district court did not err in terminating the 1981 decree.

## B. Constitutional Claims

The inmates next assert that § 3626(b)(2) is unconstitutional as applied to this case because it deprives the federal courts of the power to issue effective remedies for constitutional violations, and it burdens the inmates' fundamental right to access to the courts. Appellant's Br. at 16-20. The crux of the inmates' argument again rests on

---

[3]We do not address the validity of this argument today as the question is not properly before us.

[4]J.A. at 13a (district court's finding that the 1981 relief was not narrowly tailored).

[5]Watson, 90 F.R.D. at 147-48 ("The terms of the proposed consent decree offer benefits to the inmates that could not be constitutionally imposed, and at the same time all serious constitutional issues are adequately remedied in the decree."); id. at 155 ("This Order may include specific requirements and procedures beyond what is required by the Constitution of the United States of America and Constitution of the State of Iowa, or any other statutory or common law requirement.").

[6]Appellant also asserts that because the decree should be deemed to have the proper findings under the PLRA, § 3626(b)(1) applies rather than section (b)(2). Appellant's Br. at 10-13. Because we hold that the decree does not contain the proper findings, we find that appellant's argument on this point has no merit.

their contention that the decree is a "litigated judgment" which was impliedly narrowly tailored, necessary, and the least intrusive means to correct the constitutional violation. Termination of this decree would therefore prevent the district court from completely remedying the constitutional violations found in 1981 and would deprive the inmates of a fundamental right in violation of the Equal Protection Clause of the Constitution.

However, as we found supra, this decree is not a "litigated judgment." Rather, the decree is unique in that it is a consent decree accepted on behalf of the class by the court after a finding that the named representatives were not acting in the best interests of the class. Thus, the decree contains relief that is greater than could constitutionally be imposed if the decree were solely imposed by the court. Watson, 90 F.R.D. at 147-48 ("The terms of the proposed consent decree offer benefits to the inmates that could not be constitutionally imposed, and at the same time all serious constitutional issues are adequately remedied in the decree."). Accordingly, this case is identical to Gavin v. Branstad, 122 F.3d 1081 (8th Cir. 1997) and Tyler v. Murphy, 135 F.3d 594 (8th Cir. 1998), which also involved consent decrees requiring greater relief than could constitutionally be imposed by the court alone. In Gavin, this Court rejected the contention that application of the PLRA to such a consent decree deprived the inmates of their fundamental right of access to the courts, 122 F.3d at 1089-90. Similarly, in Tyler, this Court rejected the contention that application of the PLRA to such a consent decree deprives federal courts of their power to remedy constitutional violations, 135 F.3d at 597. Accordingly, bound by this direct precedent, we find that the district court did not err in finding the PLRA constitutional as applied to this case.

## C. Discovery

The inmates' most meritorious argument is that the district court erred in denying them adequate discovery to prove the existence of current and ongoing violations pursuant to 18 U.S.C. § 3626(b)(3). We review a district court's discovery decisions for abuse of discretion. National Bank of Commerce of El Dorado v. Dow Chemical Co., 165 F.3d 602, 606 (8th Cir. 1999); Noll v. Petrovsky, 828 F.2d 461, 462 (8th Cir. 1987). The United States, as intervener, agrees that in some instances, discovery should be allowed in order for inmates to determine if a current and ongoing violation exists. Appellee-Intervener's Br. at 16.

Even if the United States is correct in its interpretation of the PLRA, an issue which we decline to decide today, discovery would not be necessary in this case. The

district court found in its termination order that appellants failed to show present violations of constitutional rights, that most of the problems giving rise to the decree had been solved, and that recent reports suggested that the only areas of current noncompliance with the decree were not of a constitutional magnitude. J.A. at 13a-14a. The district court based this finding on evidence produced in a lengthy 1996 modification hearing and in recent reports from the Iowa State Commissioner of Health, the Iowa State Fire Marshal, and the Regional Director of the Federal Bureau of Prisons. J.A. at 13a-14a, 16a-31a, 34a-36a. Additionally, when asked at oral argument if there was any indication of current violations, appellant could only point to "the looming threat of potential overcrowding" but did not produce any evidence to support a finding that this threat constitutes a "current and ongoing violation" under the PLRA. Given the wealth of evidence available in the record to support the district court's finding of no current and ongoing violations, we find that the denial of discovery in this case was not an abuse of discretion.

## III. CONCLUSION

Finding that the district court properly terminated the consent decree in this case pursuant to the PLRA, that the immediate termination provision of the PLRA as applied to this case is constitutional and that the district court did not abuse its discretion in denying the inmates discovery, we hereby affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.